Good morning, Your Honors. Rebecca Peterson on behalf of the appellants. I would like to reserve four minutes for rebuttal. This case alleges misleading advertising claims under the California Consumer Protection Statute. Class certification is commonly granted in these cases and none of the issues identified by the district court below barred a path to class certification here. I will focus on three issues, predominance, Comcast, and C4. This case is about why the alleged uniform misrepresentation, the Barfrino promise, that the dog food is biologically appropriate, made with fresh regional ingredients, and never outsourced, is misleading based on what is not told consumers, the alleged omissions. And the alleged omissions here are the common practice of using non-fresh ingredients, including regrinds, expired, or frozen ingredients. The common practice of using non-regional ingredients, plural, and also the risk or inclusion of heavy metals, BPA, or pentobarbital. The district court did not consider the alleged omissions in denying class certification here and instead focused on context, but that context is irrelevant because not a common practice of using regrinds, using expired ingredients, or frozen ingredients. Also, no single bag discloses the common practice of using multiple non-regional ingredients. And finally, not a single bag discloses the risk or inclusion of heavy metals, BPA, or pentobarbital. After finding that the Barfrino promise was the district court, then went and decided predominance was not met based on this irrelevant context. But if the district court had correctly pivoted and considered the omissions at that point, it would have seen that the context is irrelevant and the predominance is satisfied because the omissions... But here, though, each, the purchasers of these, I mean, by virtue of your this bag, this pet food, are looking for, in effect, customized, a customized product. So some are looking for this, some are looking for that, some are looking for fish, some are looking for local fish, some are looking for other things. And on the basis of that, the judge determined that the class, that there was no commonality because different class members were looking for lots of different things. So help me understand where the error was. Yes. Thank you, Your Honor. So the error was in predominance, as this court is a standard where you consider and balance the common issues against individual issues. And so here, the district court did laser focus in on one issue that he held was common, but then under the commonality standard, which is whether the Barfrino promises are misleading. And he stopped there, and he did not go on to consider any of the other potential common issues that this case involves, which there are many. And also, the big concern here is that it is, the allegations here is whether the Barfrino promises are misleading and based on the specific omission. And that is a reasonable consumer standard. So you don't have to focus in on if one specific consumer was more interested in having a lamb product versus a fish product. And if that was true, then there really could be no class certification of any type of cases where there's a variety of flavor of a product because that would come into play, and that would cut off class certification of any consumer protection statute or consumer protection class protection where there's, let's say we do Lays chips, and they have ones that are French onion, and they might have one that's barbecue. And if we are able to say, well, that could never be certified because the person buying the barbecue is more interested in spicy, where maybe a different person was more interested in the amount of calories. And that is just not a consideration at the predominant standard under the consumer protection statute. Right. But another representation had to do with fresh ingredients or locally sourced ingredients. And those are a lot closer, I think, by way of analogy to follow up on what Judge Parker asked you, to the cases where we have spent a lot of ink and a lot of time trying to decide what 100% natural means, because that might mean different things to different people. Right. And so to just follow up on his point, there are other terms in there that go beyond it and more problematic than the examples you just gave, Ms. Peterson, about literally the difference between chicken or lamb. Right. Some of them are much more subjective. Plaintiffs disagree that any of it is relevant because the overall message is championed marketing mantra of Bifrino. It is plastered all over the bag. And there might be one place on each bag that has context that might relate to frozen, as Your Honor referenced, or local also, as Your Honor referenced. But that does not change that any of those disclosures do not clean up the lack of telling consumers that there is a common practice of regrinding. None of the bags and none of the content or context that defendants have raised deal with regrind. None of that context deals with expired ingredients. In fact, Champion itself has a policy that when an ingredient comes in, they add an additional, those suppliers usually have three to four days, best shelf life, they add 14 days. There's nothing on these bags that tell a consumer that this is a concern, nor is there anything on the bag, even if they do disclose one international ingredient, that there's multiple national, international ingredients used. It is the overwhelming picture to these consumers is that this food is made with fresh regional ingredients, and that is biologically appropriate. And so, but you would, would you concede that all of your punitive class members have been not exposed to the same misrepresentations? What I can see that they all have not been exposed to the same misrepresentation. Right. No, because the misrepresentation that's alleged here, the overarching misrepresentation is the Freno. And as the court noted, that's a uniform message. They all saw Burfrino, and they, all of them did not see any of the disclosures regarding the omission. It means different things to different purchases, doesn't it? But that, Your Honor, that's not a consideration that comes into class certification under the California Consumer Protection Statutes. It doesn't have to be focused on that one consumer might care more about fresh, and another consumer may care more about biologically appropriate. It's whether or not it's material, and that we have common proof of, as shown in the record below. And we also have our survey done that shows that these misrepresentations are material, and the omissions are material. And so that's the only burden that plaintiffs have to show. We don't have to show that it was the exclusive or driving reason for buying that product. It's just whether or not they're material. And, you know, Champion argues that the district court had no reason to consider the alleged omissions because of the race contest issue. But that's incorrect. And a common question of whether the uniform omissions would be for word identical, as they overwhelmingly and repeatedly promote Champion's marketing mantra of the free note, and they do not disclose the alleged omission. And the answer to this question would drive the resolution of the claim, and therefore sufficient to establish predominance. And this follows in line with relevant authority, including this decision, this court's decisions in Yokoyama, and the California Court of Appeals decision in Adams. There was absolutely no weighing or considering the common evidence in the record that shows the materiality, which is what we need to prove is plaintiff's burden of the omissions and supports a class-wide presumption of reliance here. All of the evidence... Can I ask, counsel, I think you're right. We're looking for a common question, right? We've all read Walmart and we know about that. We're looking for the common answer, right? Because there's one thing we can resolve. So in this case, given that, as Judge Parker said, there were many different labels, and it seems like you're trying to focus us on the omissions, but how do we get to a common answer? It seems like there are... Each label posed a different question, didn't it? Plaintiff... No, each label did not present a different common question, because the common question here is... No, no, no, an answer. I'm looking for a common answer. A common answer, I apologize. And the ingredients were different on these various formulas, on these various recipes. Yes? I think the briefing's been clear on that point, so I'm trying to figure out how a jury could resolve this in one fell swoop. So, for instance, the common answer would be, is there a common practice of champion using non-fresh ingredients, based on the evidence in the record? That would apply class-wide. That would have nothing to do with the additional context on the bag. Another common answer that could be answered by the evidence, without having to subclass, would be, was a common practice for champion to use non-regional ingredients? And then we'd have to decide whether or not each of those was material to the purchasing decision, right? Right. And that comes on from the evidence in the record, and also from our survey, our expert report, showing why it is material. And Champion's own documents show that this information is material. They chose the Frino for a very specific reason. It drives their sales. It's their marketing mantra. They put that out there to induce consumers to purchase and pay that high premium, $90 a dog bag. This is not a $25 dog bag. And they would not be adding any type of context on those bags that contradicted that for Frino message. But, again, let me ask you this. Let me ask you this. If I were a district judge, I might have concluded that you were right, that, gee, it's a post-question, but that the common misrepresentations seem to me to override the unique ones. And some other district judge may have resolved the problem somewhat differently. But given what you were left with, where is the abuse of discretion? So, under this court's authority in both, including Kelly and Yokoyama, legal error is abuse of discretion. And so here... What's the legal error? I see it improper, a disputable way, but why isn't that quintessential, quintessentially a judgment call that we review for abuse of discretion? It's... The authority in this circuit says that if a court focuses solely or gives too much weight to one issue over others, that is error. And so that, here, the district court focused too... Well, gave exclusive weight to one question. There were 14 questions. There were... And including... At that point, he could have turned... The district court could have turned and subclassed if the context was an issue and plaintiff did request that both in the reply and at oral argument that we could subclass either by diet or even limit it to just the bags that plaintiffs purchased. And then this whole issue of whether or not the context raises individual issues is not a problem. That would have satisfied predominance easily. I would also like to quickly get to Comcast because he also held that Comcast was not met for the same reason that he held that predominance was not met. And that was because he focused solely on the misrepresentation. And Comcast, all it's required is that it's tied to our liability theory and that it tests the omissions. Here, you cannot test omissions without giving information to the survey respondents, to the consumers. And that's what our corrective statements did. We could not have tested the misrepresentations as to omissions because they weren't on the bag. There was nothing for us to pull from the bag. So we had to give... Dr. Krosnick had to give information to consumers when he was testing what would the value of this all Comcast required. And especially... But the judge said that your expert didn't meet the Comcast test because he didn't test the effects of the misrepresentations that were actually on the boxes. So why was that error? What did the district judge miss? So for two of the corrective statements, the misrepresentations fresh and regional are actually tested. And then as to the ones for the heavy metals, we couldn't test the misrepresentations because it's an omission. There was nothing for us to test as a representation as to heavy metals BPA because they don't say anything. And so that's where the court erred because... And that type of damages model has been found proper. For instance, the NRA errors cable modem, there they tested the omissions. And it was just like here where champion attacks what the corrective statements say, the judge held that that satisfied Comcast and any attack on what the actual disclosure was given in the corrective statement goes to and that's something that's for later. Counselor, you are well over time. You're a minute and a half over time. So I'm going to stop you there. Okay. Thank you. Yes. We'll hear from opposing counsel, please. May it please the court, Elliot Shurker on behalf of Champion. Plaintiffs claims both omissions and misrepresentations of whatever else they choose to call them turn on, completely turn on what is on and what is in each individual bag of Champion dog food. That's what the district judge correctly called context. Now all the bags have some form of the baffrino message. That's true. But each of Champion's many diets, there are 47 at issue here, tells the buyer specifically what is in each bag. And notably, you did not hear plaintiff's counsel say that what we disclose on the bags is not true. When we disclose the source of the food in the bags, plaintiff's counsel doesn't tell you and can't tell you that it's not true. I confer the court to the supplemental excerpts of record, particularly pages 892 through 893, 876 through 877, 852 and 853. Those are classic examples of disclosure. For example, our lamb and apple formula specifically discloses that the lamb is from New Zealand. No one purchasing the bag is confused as to the source of the lamb in the lamb and apple diet. Our lamb and apple singles formula specifically disposes. This is a record, the supplemental excerpts 876 through 877, that the lamb is from New Zealand and from Kentucky. Counsel, is it your position that a jury couldn't find that the label is misleading when it says that the ingredients are fresh? We're saying that context, this is all about context. There is no... I asked a different question. I'm asking a different question. You started by saying that she doesn't claim, opposing counsel doesn't claim that the label says anything that's untrue. I think she does. She thinks it's misleading to say the ingredients are fresh when in fact many, much of this, I think her position is that much has been frozen. So I'm just trying to tease out whether or not that is your, what is your response to that? Our response is that if they went to a jury on an individual plaintiff's case or an individual plaintiff purchased, the context of the bag would be a jury issue. But the question here is context of the bag, an issue as to whether this case can be tried as a class action. Right. And there are 47 different bags. Is that right? There are 47 different diets and those diets change over time and change by kitchen. So there's 47 diets that have changed at various and sundry times. It's each... Right. And so they all say Baffarino. Yes. I think they all say Baffarino, but then they don't all have the same list of ingredients. Some of them say lamb from New Zealand. Some of them don't. Is that right? There is no contention that any bag that says lamb, that doesn't say it's from New Zealand, the lamb is from New Zealand. That's what I meant. I appreciate that, sir. But I'm trying to figure out, I appreciate that and I didn't mean to suggest otherwise. But this is the context I think the district court was trying to figure out, was trying to get his arms around in order to figure out whether there's a common answer to this question. Judge, if I could... 892. I'm just trying to make sure that I understand your position is that there's 47 different labels that would have to be considered in order to get to the context the district court was troubled by. Is that right? That's correct. That is exactly correct. And the bag doesn't say Baffarino across the top. It's not emblazoned on the top of any single bag. There's some small print that talks about biologically appropriate and fresh ingredients, but there is full disclosure on each bag of all the ingredients and where they come from. That's the context that the district court is talking about. That's the context that the district court used to determine that the issue couldn't be tried on a class basis. Now, what the plaintiffs are really saying... Wait, wait, wait, wait. Sorry, forgive me for interrupting, but before you leave that, one of her major theses is that there are omissions. So let me ask, please, getting back to Baffarino and the 47 labels, do any of the labels say that ingredients were frozen? Fresh and raw is what it says on the bags. And the definition... Does that mean the answer to my question is none of them use the word frozen? Raw is frozen. You look at the deposition of our CEO. He says if you walk into a pet store and you ask for the raw food, they point you to the freezer because that's where raw food is kept. I'm asking a really specific question. Does any label use the word frozen? Off the top of my head, not sure. I don't believe so, Your Honor. Thank you. We use fresh and raw as the description of the diets. Fresh is something that's never been frozen. Raw is something that by definition has been frozen. That's how it gets to the kitchen from the... That sounds... Counsel, that sounds like a merits question. Their theory is that consumers are not aware when it says fresh or raw, that they're not aware that that means frozen. And maybe you're right. Maybe you'll be able to prevail and convince a jury that, no, all reasonable consumers would interpret raw in the way that your CEO does. But isn't that just a merits question? It's not... It doesn't defeat a predominance. Your Honor, what it is, it's an individual question based on what's in each bag and what's stated on each bag. And that's what the district... That's not the case because, as you just answered to Judge Kristen's question, none of the bags say that there are frozen ingredients in there. And their position is that none of the other statements on there adequately disclose that fact to consumers and that consumers are therefore misled when they read the word fresh. What we're saying is that if there's nothing frozen in an individual bag, not putting frozen on the individual, but not putting not frozen on the bag is meaningless. We're not saying that every bag has frozen ingredients, and they're not saying that every bag has frozen ingredients. We're saying that each individual bag has to be examined and what's on each individual bag has to be examined. And Judge Parker, in response to your question, that's not a merit... That's not a merits issue. That's an individualized issue question. But the contents of each bag have to be examined in light of what's on each bag to determine if they're objectively misleading. But not if it's a common omission. They all say Baffrino and none of them say frozen. That's what we're trying to get at. Isn't that a common question? If there's frozen ingredients, Your Honor. If there are frozen ingredients, that might be an individualized question. But it's a question... Oh, you're saying not all recipes include frozen ingredients. No, Your Honor. Not at all. That's not alleged. That's not proven. That's not shown in any way. We sometimes use frozen ingredients, and we sometimes don't use frozen ingredients. And the definition of raw in the AFCO regulations is frozen. So it's going to be an individualized issue question in each bag. And that's all the district court said. Whether it's a misrepresentation alleged or an omission alleged, what the plaintiffs tell you at page one of their brief is two sides of the same coin. And that's exactly right. If it says fresh on the bag, they claim that's an alleged misrepresentation because it isn't fresh. But the omissions claim is that it doesn't disclose that it's not fresh. It's exactly the same question. The same alleged misrepresentations and omissions have not been made to each customer by definition with 47 diets and changes in those 47 diets. Can I ask you a question about the sus that district court rejected involving pentobarbital? As I understand it, the court rejected that subclass solely before the failure of the plaintiffs to satisfy Comcast. Is that correct? That's correct, Your Honor. That's the full refund theory. And the reason for that is there was a large amount from one distributor that was found to have pentobarbital at all, but a relatively small amount of it was quarantined and was never sold. There was about 100,000 pounds that apparently was sold at one small point in time. What the district court said is we've got to go bag by bag to find out whether there's pentobarbital in any of those bags. It's the same bag by bag. Why isn't the theory, let me ask you this, why isn't the that a bag of dog food they had might contain that ingredient, would simply not serve it to their dog? So it is in fact valueless to them, and it's not like they're trying to capture the reduced value. It's just people would just throw that away, so it's of no value to them at all. Why wouldn't they be entitled to a full refund of the purchase? For the district court rule, and remember this is a full refund theory on the pentobarbital, but the district court rule, and it's on page 24 of the order, is that even assuming arguendo that class members who purchase dog food contaminated with pentobarbital should receive a full refund, it does not follow that class members subjected to a risk of contamination should receive a full refund. That's what I'm saying. It seems to me perfectly reasonable to assume that no pet owner, even if they don't know for sure whether the bag of dog food they're holding in their hands contains that substance, if they just were aware that there was a risk that they'd be feeding their dog that substance, they would not do so. And so therefore, basically what they're holding in their hands is a bag of trash that they're going to throw away. So why would they in that scenario be entitled to a full refund? That's not something the plaintiffs ever showed or did damage as well. Plaintiffs don't have any way, and that's what really it comes down to on Comcast as well. The plaintiffs haven't shown how they can try that theory or any other theory on a class-wide basis because let's talk about the Krosnick survey, for example, which goes to their price premium theory. And all of those questions that the respondents were asked were drafted by that everything you've heard about here this morning from plaintiff's counsel, the presence of heavy metals, which is in every food is ubiquitous. BPA, which is ubiquitous. All the questions that were asked of the respondents were laboratory testing has shown that these things could cause very serious illnesses, could cause very serious damage to the pets. And the plaintiffs have walked away from that theory. They told the district court, they tell this court that they're no longer contending that any of the presence of any of those things in the food is dangerous. So they've got a survey that says I can determine class-wide damages because respondents gave answers to questions about the danger of these things in food, which notably didn't include Bentham. But that's an example. That's my damages theory. But the reality is that they're saying merely the risk of presence is enough to get us to a jury as a class action. It doesn't fit. The damages theory doesn't fit. And there's no evidence at all that the mere risk of presence of pento in a small, remember a very small universe of bags of food is enough to render it valueless. That's a full refund. That's their full refund theory. They don't have anybody they could put in front of a jury who could testify on a class-wide basis to any of that, just as they don't have anyone they can put in front of a jury who can say that the mere risk of presence of non-dangerous heavy metals, of non-dangerous BPA in the food is a basis for awarding damages to on a class-wide basis. And that's the lack of fit between Comcast, that's the lack of fit that Comcast requires. That's the lack of fit here that violates Comcast in their damages model. Now turning to their position on subclasses, which you heard about very briefly at the end of their argument, that was raised to the district court at the end of the argument on class certification. Essentially, Judge, can you give us a chance please to brief subclasses? And the court ruled that subclasses would suffer from the same problems that the class at large suffered from. You would still have to go bag by bag as to each of their alleged subclasses. And what they tell you here, and I think I heard it this morning as well, is that they asked the district court for leave to file to propose subclasses in their reply on class certification. And I refer the court, they cite to docket 212 at page 15, and they weren't asking for subclasses, they were asking for a narrowed class to be tried without trying damages. That's not a subclass, that's if anything, some sort of issues class. The district court was never requested to create a subclass or create subclasses until the very end of argument. And the fact that the court gave it any consideration, we submit, was generous of the court to do. But the bottom line on subclasses is the same as on damages. And they concede, by the way, that if they lose under Comcast, they lose under Comcast for their subclasses as well, because they are proceeding on a theory on damages that doesn't have any basis in reality. And I think the best evidence of that, Your Honor, is the the N.O. in Bethrino stands for never outsourced. And on appeal, they've abandoned never outsourced, but they asked the respondents in the survey on damages whether they would be responsive to knowing that the dog food was outsourced. So that struck completely out of the damages model. And the other thing important to know about the damages model is the way Dr. Prosnick did this was he gave the respondents varying numbers of these alleged, of these eight statements. Remember, at least four of which presume that the contents of the dog food bag is going to cause serious injury to a dog, which it's not going to do, and they've conceded that. And he added up, if I gave them four, how many percentages responded negatively. If I gave them six, how many responded negatively. There was never any attempt to present these to the respondents in a way that we can now use. We can't pull four statements out because we don't know which they never outsourced out because we don't know. They have not shown a way to try this as a class action. That's the bottom line of the district court's order. It was not an abuse of discretion for the court to deny certification. Thank you. Thank you, counsel. Counsel, Ms. Peterson, you were significantly over your time, but we did ask several questions. We'll put a minute on the clock if you have closing comments you'd like to make. Counsel? Oh, I apologize. My phone was on mute. Oh, okay. Thank you for the moment, for the minute. I would like to address a few issues. One is that in the alternative here, C4 is an option as to the common issues as to liability, some of which have been raised here, including the pentobarbital issue, where that is something that we could prove and we have the ability to prove based on their own documents. For instance, their corporate represents, their 30B6 testimony saying that they did not inform consumers because they didn't want to shock the market, that they had actually made food with pentobarbital-tainted tallow. Also, as to the representation, they do full disclosures as to where all the ingredients come from, from the bag. That's not correct. They may disclose a non-regional ingredient here or there. There is no disclosure and there's no tracing as to every ingredient on the back of the bag. And finally, this case has always been about the risk, and that is what our corrective statements test, the risk of heavy metals. And it's a risk because people know that there is a potential health issue with it. So we've never abandoned anything and we've never changed anything. This has always been about the risk or commonplace practices at Champion. Thank you for your time, Court. Thank you both. We'll take this case under advisement and move on to the next case on the argument, which is case number 19-56500, Moore v. Stemgenics.
judges: Parker, Christen, Watford